UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| PACEWell 3 LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. _____ |
| | ) |
| PINCANNA – REAL ESTATE GROW, | ) |
| LLC AND PINCANNA RETAIL | ) |
| PROPERTIES, LLC, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiff PACEWell 3 LLC ("PW3" or "Plaintiff"), by and through its undersigned attorneys, alleges and states as and for its Complaint against Pincanna – Real Estate Grow, LLC ("Pincanna Grow") and Pincanna Retail Properties LLC ("Pincanna Retail" and, together with Pincanna Grow, "Defendants" and each a "Defendant"), as follows:

## INTRODUCTION

1.     Defendant Pincanna Grow owns real property (the "Property")[1] that constitutes Plaintiff's sole collateral for Pincanna Grow's payment obligations under

---

[1] On information and belief, Defendant Pincanna Retail claims ownership of a portion of the Property that Pincanna Grow purported to subdivide and sell to it without Plaintiff's required foreknowledge and consent.  Plaintiff does not recognize this purported transfer as valid, as discussed in further detail below.

1

a Property Assessed Clean Energy ("PACE") loan exceeding $4.625 million. Plaintiff holds interests in the first-priority, properly perfected, and duly recorded special assessment lien levied against the Property pursuant to Act 270 of the Michigan Public Acts of 2010, commonly referred to as the "Property Assessed Clean Energy Act," MCL 460.931 *et seq.* ("Act 270"), a lien that runs with the Property and has the same priority and status as other property tax and assessment liens.  At closing, the Property was valued at $27 million—a substantial asset that should have protected Plaintiff's investment.  Instead, Defendants have squandered that security.  Through abandonment, neglect, and self-dealing, Defendants have allowed more than 90% of the Property's value to vanish, leaving Plaintiff's collateral worth a fraction of its original value and Plaintiff facing catastrophic losses.

2.      Pincanna Grow has abandoned its responsibilities.  It has ceased operations,[2] defaulted on its payment obligations to Plaintiff, and allowed the Property to fall into disrepair—leaving Plaintiff exposed to substantial, irreparable harm.  Every day that passes without intervention only deepens Plaintiff's losses.

3.      Plaintiff brings this action based on Pincanna Grow's breaches of contract and defaults under the PACE loan documents to recover damages, costs, and fees and to compel an immediate judicial sale of the Property to satisfy

---

[2] As has Pincanna Retail.

Defendants' outstanding obligations.  Plaintiff seeks the appointment of a receiver to take control of, preserve, and sell the Property—functions that Defendants have proven unwilling and incapable of performing.  The need for a receiver is urgent: the Property is deteriorating daily while Defendants actively accelerate its destruction.

**PARTIES, JURISDICTION AND VENUE**

4.     Plaintiff PW3 is a limited liability company organized under the laws of the State of Delaware.  Its principal place of business is located at 19 Old Kings Highway South, Ste. 210, Darien, CT 06820.  PW3's sole member is PW 23 Holdings, LLC, a limited liability company organized under the laws of the State of Delaware, whose sole member is MFSDM, LLC, a limited liability company organized under the laws of the State of Delaware, which is wholly owned by MaplesFS, Ltd., a charitable trust governed by Cayman Islands law.  Accordingly, PW3 is considered a citizen of the Cayman Islands, for purposes of diversity jurisdiction.

5.     Defendant Pincanna Grow is a limited liability company organized under the laws of the State of Michigan.  Its registered agent is Martin Stoneman, located at 27750 Stansbury, Suite 200, Farmington Hills, MI 48334.  Its sole member is Compassionate Advisors – Holdings, LLC ("Compassionate Advisors"), a limited liability company organized under the laws of the State of Michigan.  The members

3

of Compassionate Advisors are Stoneman Holdings, LLC, Schafer Holdings, LLC, Esser Holdings, LLC, Valerio Holdings, LLC, Robert Nusbaum Holdings, LLC, and NB Acquisitions, LLC, each of which is a limited liability company organized under the laws of the State of Michigan.  On information and belief, the sole member of Stoneman Holdings, LLC is Martin Stoneman, an individual and resident of Michigan; the sole member of Schafer Holdings, LLC is Steven Schafer, an individual and resident of Michigan; the sole member of Esser Holdings, LLC is David Esser, an individual and resident of Michigan; the sole member of Valerio Holdings, LLC, is Matthew Valerio, an individual and resident of Michigan; and the sole member of Robert Nusbaum Holdings, LLC and NB Acquisitions, LLC is Robert Nusbaum, an individual and resident of Michigan.  Accordingly, Pincanna Grow is considered a citizen of the State of Michigan for purposes of diversity jurisdiction.

6.     Defendant Pincanna Retail is a limited liability company organized under the laws of the State of Michigan.  Its registered agent is also Martin Stoneman, located at 27750 Stansbury, Suite 200, Farmington Hills, MI 48334.  On information and belief, Pincanna Retail may be the owner of a portion of an improperly subdivided parcel of the Property, as the result of an improper sale by Pincanna Grow.  On information and belief, Pincanna Retail is not considered a citizen of the Cayman Islands for purposes of diversity jurisdiction.

4

7.   On information and belief, Pincanna Retail acquired the purported subdivided parcel (no. 120-019-400-020-01) with actual or constructive knowledge of the PACE Lien recorded against the Property.  Pursuant to Act 270 and the SA Agreement, the PACE Lien runs with the land and is not extinguished by any purported transfer.  Accordingly, Pincanna Retail took its purported interest, if any, subject to Plaintiff's first-priority PACE Lien.

8.   This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between PW3 and Defendants, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.   This Court has specific personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1) because Defendants are subject to the jurisdiction of a court of general jurisdiction in the State of Michigan.  The exercise of personal jurisdiction comports with due process and is otherwise proper because Defendants purposefully availed themselves of the benefits of the jurisdiction, as Defendants conduct substantial business in this District, including the specific business at issue between PW3 and Defendant Pincanna Grow.  In addition, in one of the contracts giving rise to Plaintiff's claims, Defendant Pincanna Grow expressly consents to personal jurisdiction of "any competent court in Bay County, Michigan, for any action arising out of" the contract; none of the other contracts contain

5

countervailing provisions; and all contracts giving rise to Plaintiff's claims contain express clauses establishing the governing law as the laws of the State of Michigan.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of property that is the subject of this action is situated in this District.  Venue is proper in this District, in the alternative, under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction in this District for this action as set forth above.

## SPECIFIC ALLEGATIONS

**A.      The PACE Loan and the Transaction Documents**

11.     On or about January 15, 2021, PW3's predecessor in interest, Greenworks Lending LLC ("Greenworks") and Defendant Pincanna Grow entered into that certain Property Assessed Clean Energy Loan Agreement (the "PACE Loan Agreement", a true and correct copy of which is attached hereto as **Exhibit A**).

12.     Pursuant to the PACE Loan Agreement, Greenworks agreed to lend, and Defendant Pincanna Grow agreed to borrow a sum in the principal amount of $4,625,318.47 (the "PACE Loan").  *See id.*, § 2.01.

13.     Greenworks has fully funded the PACE Loan to Defendant Pincanna Grow in the aggregate amount of $4,625,318.47, less applicable closing fees and expenses of $375,318.47 paid to Greenworks.

14.     The current principal balance on the PACE Loan is $3,595,289.59.

15.     To secure Pincanna Grow's obligations to Greenworks under the PACE Loan Agreement, Pincanna Grow executed a note, also dated January 15, 2021 (the "PACE Note", a true and correct copy of which is attached hereto as **Exhibit B**). Pursuant to the PACE Note, Pincanna Grow promised to repay the PACE Loan, with interest, according to a payment schedule set forth therein as Exhibit A. *Id.*

16.     To secure Pincanna Grow's obligations to Greenworks under the PACE Loan Agreement, also on or about January 15, 2021, Pincanna Grow, Greenworks, and Bay County, Michigan ("Bay County") executed a PACE Special Assessment Agreement (the "SA Agreement"), which was then recorded with the Register of Deeds for Bay County, MI, and properly perfected thereby.   Pincanna Grow delivered the fully executed and recorded SA Agreement to Greenworks, a true and correct copy of which is attached hereto as **Exhibit C**.

17.     Pursuant to the SA Agreement, Bay County created a Special Assessment (as defined in the SA Agreement, § 1.01(w), the "Special Assessment" and as set forth in Appx. C thereto) upon the Property (defined as the "Special Assessment Parcel" in the SA Agreement, § 1.01(y) and Appx. B thereto, inclusive of parcel nos. 120-019-400-020-00; 120-019-400-030-00), in the principal amount of the PACE Loan. *See also, id.,* § 4.01.

18.     The PACE Lien created by the SA Agreement is a lien upon the Property for the full value of the Special Assessment, inclusive of all interest,

charges, and penalties (*id., § 4.04*), and it has the same priority and status as other property tax liens and other assessment liens pursuant to Act 270.

19.     Bay County irrevocably assigned Greenworks its right to receive all payments related to the Special Assessment.  *Id.*, § 4.02.

20.     Greenworks assigned all its rights, title, interest, obligations, and duties under the PACE Loan Agreement, the PACE Note, the SA Agreement, and all other documents executed in connection with the transaction contemplated by the PACE Loan Agreement (the "Transaction Documents"), to PACEWell 1, LLC, who subsequently assigned all its rights, title, interest, obligations, and duties under the Transaction Documents to PW3 on or about April 1, 2021.  A true and correct copy of the assignment documentation is attached hereto as **Exhibit D**.

21.     Thus, PW3 has interests in the Special Assessment lien on the Property in the current outstanding principal amount of $3,595,289.59 plus interest, charges and penalties (the "PACE Lien").

22.     Pursuant to the PACE Loan Agreement and the SA Agreement, the Property and the payments secured by the lien of the Special Assessment filed on the Property are Plaintiff's collateral.  (*See id.*, § 1.05.)

**B.     Defendant Pincanna Grow Commits Payment Defaults Under the Transaction Documents**

23.     By no later than September 14, 2025, Pincanna Grow committed a payment default under the PACE Loan Agreement (the "First Payment Default"),

by failing to pay amounts scheduled and due, totaling $246,751.50, in accordance with Article IV, Section 4.05(a) and Article IV, Section 4.03(d) of the SA Agreement.

24.     The First Payment Default constituted an "Event of Default" under Section 7.01 of the SA Agreement.  It also constituted an "Event of Default" under the PACE Loan Agreement (*see* § 6.01(a) (payment default) and § 6.02 (cross-default)) and under the PACE Note (defining "Event of Default" by cross reference to the definition in the PACE Loan Agreement).

25.     Plaintiff provided notice of Pincanna Grow's First Payment Default to Pincanna Grow and to Bay County.  A true and correct copy of said notice is attached hereto as **Exhibit E**.

26.     As of the date hereof, Defendant Pincanna Grow has not cured the First Payment Default.

27.     By no later than February 14, 2026, Pincanna Grow committed a second payment default under the PACE Loan Agreement (the "Second Payment Default" and, together with the First Payment Default, the "Payment Defaults"), by failing to pay amounts scheduled and due, totaling $246,751.50, in accordance with Article IV, Section 4.05(a) and Article IV, Section 4.03(d) of the SA Agreement.

28.     The Second Payment Default constituted an "Event of Default" under Section 7.01 of the SA Agreement.  It also constituted an "Event of Default" under

9

the PACE Loan Agreement (*see* § 6.01(a) (payment default) and § 6.02 (cross-default)) and under the PACE Note (defining "Event of Default" by cross reference to the definition in the PACE Loan Agreement).

29.    Plaintiff provided notice of Pincanna Grow's Second Payment Default to Pincanna Grow and to Bay County.  A true and correct copy of said notice is attached hereto as **Exhibit F**.

30.    As of the date hereof, Defendant Pincanna Grow has not cured the Second Payment Default.  The cure period provided under Section 7.02 of the SA Agreement has likewise expired without any payment or other cure by Pincanna Grow.

31.    As a result of Pincanna Grow's uncured Payment Defaults, as of the date hereof, Pincanna Grow owes Plaintiff no less than (a) $493,503.00 in missed scheduled payments, plus (b) interest at the Default Rate of 18% per annum (as defined in § 1.01(e) of the SA Agreement and as set forth in the "Interest Accrued on Delinquency Payments" section of the PACE Note), which has accrued and continues to accrue daily, plus (c) Plaintiff's costs and expenses and reasonable attorneys' fees (pursuant to the "Remedies" section of the PACE Note and § 7.05 of the PACE Loan Agreement).

**C.      Defendant Pincanna Grow Commits Additional Defaults Under the Transaction Documents and Purports to Sell Part of the Property to Pincanna Retail**

32.     Plaintiff recently learned that, on or about March 5, 2025—while Pincanna Grow was already in default on its payment obligations—Pincanna Grow brazenly subdivided the portion of the Property comprising parcel no. 120-019-400-020-00 into two separate parcels (nos. 120-019-400-020-01 and 120-019-400-020-02) and purported to sell newly created parcel no. 120-019-400-020-01 to Pincanna Retail, an entity under common control with the same registered agent, Martin Stoneman.  Plaintiff does not recognize this purported transfer as valid, and the entire Property remains subject to the PACE Lien.

33.     Pincanna Grow's conduct is in express violation of its express covenants under sections 5.18 and 5.20 of the PACE Loan Agreement.

34.     Pursuant to section 5.18 of the PACE Loan Agreement, Pincanna Grow covenants that it "shall not, without the express written consent of Lender, in Lender's sole discretion, by act or omission impair the integrity of the Premises as a single, separate, subdivided and zoned lot separate and apart from all other property which is owned by [Pincanna Grow], or not." *Id.*

35.     Pincanna Grow concealed from PW3 its conduct of subdividing parcel no. 120-019-400-020-00 into two separate parcels, and it never sought or received

the written consent of PW3 or its predecessors in interest to subdivide the parcel, as unambiguously required by the Transaction Documents.

36.     Consequently, Pincanna Grow violated its covenant in section 5.18 of the PACE Loan Agreement, which constitutes an Event of Default under section 6.01(b) of the PACE Loan Agreement.

37.     Pursuant to section 5.20 of the PACE Loan Agreement, Pincanna Grow covenants, in relevant part, that it "shall not transfer ownership of the Property without (a) prior written notice to Lender, and (b) execution by the purchaser of the Property of an assignment of this Agreement in a form acceptable to Lender."

38.     Pincanna Grow similarly concealed from PW3 its conduct of attempting to transfer ownership of the improperly subdivided parcel no. 120-019-400-020-01 from itself to Pincanna Retail—an insider transaction with a commonly controlled entity—and did not provide prior written notice to PW3 or its predecessors in interest or receive an assignment of the PACE Loan Agreement executed by Pincanna Retail in a form acceptable to PW3 or its predecessors in interest.

39.     Consequently, Pincanna Grow violated its covenant in section 5.20 of the PACE Loan Agreement, which constitutes an Event of Default under section 6.01(b) of the PACE Loan Agreement.

40. Neither PW3 nor its predecessors in interest have agreed to reduce the Special Assessment to carve out and exclude parcel no. 120-019-400-020-01.  The entire Property, inclusive of parcel no. 120-019-400-020-01, continues to be subject to the Special Assessment.

41. Furthermore, by no later than May 7, 2026, Pincanna Grow made the decision to stop paying insurance premiums for the Property and unilaterally declared it would not make further payments—in violation of its covenant, pursuant to section 5.02 of the PACE Loan Agreement, to "obtain and maintain, or cause to be obtained and maintained, throughout the term of the Special Assessment," the specified insurance coverage for the Property.  This reckless conduct, too, constitutes an Event of Default under section 6.01(b) of the PACE Loan Agreement.

**D.      Plaintiff's Remedies**

42. As a result of the Events of Default enumerated above, among others, Plaintiff is entitled to various remedies under the Transaction Documents.

43. The PACE Loan Agreement provides that, "[u]pon the occurrence of an Event of Default, … [Plaintiff] may at its sole discretion," *inter alia*:

(a)  Exercise all the rights and remedies available to secured parties under the provisions of the UCC, the PACE Agreement and other applicable law.

…

(c)  Institute legal proceedings for the sale, under the judgment or decree of any court of competent jurisdiction, of any or all of the Collateral.

(d)   Exercise such further rights or remedies provided hereunder, by any or all of the Security Documents, or at law or in equity.

…

(f)   Pursue any other remedy provided by law for the collection of the Obligations or any portion thereof, or for the recovery of any other sum to which Lender may be or become entitled for the breach of this Agreement by Debtor.

…

*Id.*, § 7.01(a), (c), (d), (f).

44.   Section 7.04 of the PACE Loan Agreement, in turn, authorizes Plaintiff to "commence an action against [Pincanna Grow] … to enforce the payment of any sum or the performance of any of the Obligations, for the recovery of damages or for any other reason at any time or times and without regard to the existence of additional causes of action or whether or not all or any portion of the Obligations shall be due …"

45.   Plaintiff is entitled to the same remedies enumerated in the preceding paragraphs pursuant to the PACE Note, which provides that, "upon the occurrence of any event of default the lender has all those remedies set forth in the [PACE] Loan Agreement and under Michigan law." (*Id.*, "Remedies" section.)

46.   Thus, as a result of the Events of Default enumerated above, Plaintiff is entitled to commence this action for, *inter alia*, recovery of the Payment Defaults and all advances and related costs and expenses, a sale of the Property, and the satisfaction of the first-priority, properly perfected PACE Lien thereby.

**E.     The Property's Deteriorating Value and the Defendants' Poor Financial Condition**

47.     The Property, which serves as Plaintiff's collateral, is deteriorating in value because Defendants have shuttered all operations, stripped fixtures, and effectively abandoned the Property to the elements. On April 22, 2026, a representative of Plaintiff conducted a site visit to the Property and personally witnessed that Pincanna Grow had torn open walls to cannibalize equipment from the premises—actively destroying Plaintiff's collateral. A photograph of a demolished wall at the Property is attached hereto as **Exhibit G**.

48.     Pincanna Grow has completely ceased operating any business at the Property, and Pincanna Retail is not conducting any operations on the portion of the Property that Pincanna Grow purported to transfer to it. The Property sits idle and deteriorating while Defendants have washed their hands of it.

49.     In addition to the Payment Defaults discussed above, Defendants are delinquent on property tax payments for the Property for 2024 in the amount of at least $163,851.07 and for 2025 in the amount of at least $136,600.51, for a total of at least $300,451.58. True and correct copies of the tax records for the Property reflecting these delinquent and unpaid taxes, which are maintained online by Bay County, MI and were accessed on April 28, 2026, are attached hereto as **Exhibit H**.

50.     Defendant Pincanna Grow has also stopped paying insurance premiums for the Property and declared it will not make further payments. As a result, the

15

insurer provided notice that it would terminate all coverage for the Property on May 7, 2026 unless the past due premium balance of $10,664.19 was paid.  A true and correct copy of the email containing the notice of intent to cancel insurance that was forwarded to Plaintiff is attached hereto as **Exhibit I**.  Due to the imminent risk of terminated coverage—a disaster that would have left Plaintiff's collateral wholly uninsured and exposed to catastrophic, unrecoverable loss—Plaintiff was forced to make a protective advance payment in the amount of $10,664.19 on May 6, 2026. Plaintiff was forced to make another protective advance payment in the amount of $10,689.19 on June 4, 2026.  Another payment of $10,664.19 is coming due on or about July 7, 2026, and there is no indication Defendants will pay it.

51.     Defendants, through their registered agent, also informed Plaintiff during the April 22, 2026 site visit, and again on April 28, 2026, that they have fallen behind by approximately $180,000 on their electric, water, and gas utility payments, and are expecting shutoff notices imminently—further evidence of Defendants' complete financial collapse.  To prevent termination—and possible damage to machinery—Plaintiff has begun making protective advances on the outstanding amounts due.

52.     Plaintiff estimates that, absent immediate intervention, the Property will continue to lose value due to ongoing physical deterioration, the risk of vandalism or weather damage to the exposed structure, the accumulation of unpaid

16

taxes and utility charges, and Defendants' continuing removal of fixtures and equipment.  Additionally, insurance premiums of approximately $10,664.19 per month will continue to come due, which Plaintiff will be forced to advance to prevent catastrophic uninsured loss.

53.    On information and belief, Defendants are unable to pay their bills as they come due and are insolvent.  In addition to the Payment Defaults, delinquent property taxes, and unpaid insurance premiums detailed herein, Defendants have accumulated approximately $180,000 in unpaid utility bills, have ceased all revenue-generating operations at the Property, and have explicitly stated to Plaintiff's representatives that they lack the financial resources to maintain the Property or satisfy their obligations.  On information and belief, Defendants have no material unencumbered assets from which to satisfy a money judgment.

54.    Pincanna Grow attempted a sale process for the majority of the Property earlier this year through Signature Associates with an asking price of $8,650,000 (approximately $64.25 per square foot)—less than 33% of the appraised value of the Property at the time the transaction with Plaintiff closed several years ago.  However, no sale was consummated.  On information and belief, Pincanna Grow received only one offer for the Property, which the sponsors rejected.

55.    A recent valuation of the Property prepared for Plaintiff estimates the Property's total value at between approximately $1.8 million and $2.9 million—a

staggering decline of more than 90% from the appraised value of the Property at the time the transaction with Plaintiff closed several years ago, and woefully inadequate to secure even the approximately $3.6 million in principal obligations the Property is supposed to secure.

56. Rather than maintaining the Property, Defendants are actively destroying it. Pincanna Grow is tearing walls apart to strip fixtures and equipment from the Property, systematically diminishing its value below the amount of its obligations to Plaintiff. Pincanna Grow has indicated that because there are no recourse provisions in the Transaction Documents, it is not compelled to maintain security or insurance on the Property.

57. Pincanna Grow terminated site security. To safeguard the Property from further damage and destruction, Plaintiff was forced to engage a security firm, Titan, which has reestablished protection for the Property. Security for the Property is expected to cost approximately $20,000 per month.

58. On information and belief, Defendants have consciously and deliberately "abandoned" the Property, as Pincanna Grow itself has admitted in written communications with Plaintiff's representatives, including emails dated on or about April 28, 2026.

59. Defendants are unwilling and unable to maintain the Property in any condition, let alone sufficient condition to consummate a sale for a reasonable price.

60. The Property is in desperate need of a receiver to halt Defendants' destruction, preserve what value remains, and market it for sale.

61. Plaintiff has identified a capable and willing receiver candidate in Mr. Michael G. Kalil, who has over 30 years of experience as a court-appointed receiver for distressed real estate throughout the Midwest and serves as the COO and CRO of Farbman Group.  A true and correct copy of Mr. Kalil's resume is attached hereto as **Exhibit J**.

## <u>COUNT I – BREACH OF CONTRACT</u>

62. Plaintiff repeats and realleges the allegations set forth above, as though fully set forth at length herein.

63. Plaintiff and Defendant Pincanna Grow entered into the Transaction Documents, which imposed obligations on Pincanna Grow and were supported by consideration.

64. Plaintiff substantially performed all of its obligations under the Transaction Documents.

65. As detailed in the preceding paragraphs, Pincanna Grow has repeatedly, materially, and egregiously breached its obligations pursuant to the Transaction Documents, each of which constituted Events of Default under the Transaction Documents.

19

66. Plaintiff provided notice of Pincanna Grow's material breaches and Payment Defaults.

67. As a direct and proximate result of Pincanna Grow's material and substantial breaches and Events of Default under the Transaction Documents, Plaintiff has suffered significant damages in the amount of no less than $514,846.38 (consisting of the Payment Defaults of $493,503.00 plus Plaintiff's protective advance payments of $21,353.38 for insurance premiums), plus interest, costs and expenses (including monthly costs for site security from Titan, which have yet to be invoiced) and reasonable attorneys' fees, which continue to accrue.

68. Pincanna Grow has not cured any of its material breaches or Events of Default.

69. Plaintiff is entitled to judgment against Pincanna Grow for its material breaches of the Transaction Documents in an amount of no less than $514,846.38, plus interest, costs and expenses and reasonable attorneys' fees.

70. Plaintiff is entitled to a sale, under the judgment or decree of this Court, of the Property, and the satisfaction of the first-priority, properly perfected PACE Lien thereby.

## COUNT II – APPOINTMENT OF RECEIVER

71. Plaintiff repeats and realleges the allegations set forth above, as though fully set forth at length herein.

20

72.     Good cause exists for the appointment of a receiver for the Property.

73.     Defendants lack the financial resources and operational capacity—and have demonstrated a complete unwillingness—to preserve, protect, or maintain the Property.  Defendants have ceased all business operations at the Property, have made no payments on the PACE Loan since September 2025, and have accumulated property tax arrearages exceeding $300,000.  Pincanna Grow's refusal to pay insurance premiums, totaling $10,664.19, was about to result in the loss of all property and liability coverage on May 7, 2026, leaving Plaintiff's collateral wholly uninsured and exposed to catastrophic loss, until Plaintiff was forced to step in and make a protective advance for the full amount of the premium, which Plaintiff was forced to do again in June and anticipates it will need to do again by July 7, 2026, given Defendants' demonstrated unwillingness to honor their obligations.

74.     The Property is in immediate jeopardy and faces ongoing, material deterioration.  On April 22, 2026, Plaintiff's representative conducted a site visit to the Property and personally observed that Defendant Pincanna Grow had opened walls to remove equipment from the premises, exposing the interior structure to the elements and accelerating physical deterioration.  Defendants' representatives confirmed they are removing equipment and fixtures from the Property without remitting any proceeds to Plaintiff.  The Property's value has dropped precipitously—a decline of more than 90% from its appraised value at the time

21

Plaintiff and Pincanna Grow entered into the Transaction Documents.  Without immediate intervention by a receiver, the Property's value will continue to decline, further impairing and potentially eliminating the PACE Lien.

75.     Without the appointment of a receiver, Plaintiff is at risk of immediate and irreparable injury, loss, and damage to its collateral.  Defendants have indicated they do not intend to maintain security or insurance on the Property, and the alternative remedy of a tax foreclosure would take approximately 18 months to result in a sheriff's sale, during which time the Property would continue to deteriorate.  Given Defendants' demonstrated insolvency and inability to pay their debts as they come due, acceleration of the loan and pursuit of a money judgment alone would be futile, as Defendants lack the financial resources to satisfy any such judgment.  Accordingly, the appointment of a receiver is the only adequate remedy available to Plaintiff to preserve its collateral.

76.     The financial condition of Defendants and their demonstrated unwillingness to preserve the Property severely jeopardizes Plaintiff's interests in the secured first-priority PACE Lien.  Defendant Pincanna Grow has defaulted on payments to Plaintiff totaling $493,503.00, is delinquent on property taxes in the amount of $300,451.58, and has failed to pay insurance premiums of at least $21,353.38, which figure will continue to grow each month.  Pincanna Grow's conduct—including the removal of equipment and fixtures, the failure to maintain

22

insurance, and the explicit statements that it does not intend to maintain security on the Property—demonstrates that it has no intention of preserving Plaintiff's collateral.

77.     Plaintiff is entitled to have a receiver appointed as a matter of equity, pursuant to Fed. R. Civ. P. 66, to protect the Property from injury and to ensure that it is sold or otherwise liquidated and that all proceeds are remitted to Plaintiff until all obligations owed to Plaintiff are paid in full.

78.     The appointment of a receiver is urgently necessary and appropriate to preserve, protect, and maintain what remains of the value of the PACE Lien.  A receiver will be able to: (a) take immediate possession and control of the Property; (b) secure and insure the Property to prevent further loss; (c) halt Defendants' ongoing removal of equipment and fixtures and prevent further acts of waste; (d) properly manage and maintain the Property; and (e) market and sell the Property through a professional, court-supervised process to maximize recovery for Plaintiff and other creditors.

79.     Plaintiff respectfully requests that the Court enter an order appointing a receiver over the Property during the pendency of this action, with authority to take immediate possession and control of the Property, secure and insure the Property, prevent further waste, manage and maintain the Property in good condition, and market and sell the Property for the benefit of Plaintiff and other secured creditors.

23

Plaintiff has identified Michael Kalil as a qualified receiver candidate with experience in receivership matters in the State of Michigan, who is prepared to serve immediately upon appointment.

## **RELIEF REQUESTED**

**WHEREFORE**, PW3 respectfully requests that this Court order the following relief:

A. An award of money damages in favor of PW3 sufficient to compensate it for all forms of economic loss related to Pincanna Grow's breaches of the Transaction Documents in an amount no less than $514,846.38 (consisting of the Payment Defaults of $493,503.00 plus Plaintiff's protective advance payment of $21,353.38 for insurance premiums), plus interest, costs and expenses and reasonable attorneys' fees;

B. A sale of the Property to satisfy Plaintiff's interests in the PACE Lien;

C. An order appointing Mr. Kalil as receiver for the Property to maintain, market and sell the Property for Plaintiff's benefit;

D. Plaintiff's costs and expenses and reasonable attorneys' fees, provided for pursuant to the Transaction Documents and as otherwise provided for by law; and

E. Such other and further relief as the Court deems equitable and just.

Dated:  June 16, 2026   Respectfully submitted,

         FOLEY & LARDNER LLP


         */s/ Edward J. Green*
         Edward J. Green
         **FOLEY & LARDNER LLP**
         321 N. Clark Street, Suite 3000
         Chicago, IL 60654
         Tel: (312) 832-4500
         Fax: (312) 832-4700
         EGreen@foley.com

         Jake W. Gordon (P86129)
         Tamar N. Dolcourt (P73425)
         **FOLEY & LARDNER LLP**
         500 Woodward Avenue, Suite 2700
         Detroit, MI 48226
         Tel: (313) 234-7100
         Fax: (313) 234-2800
         Jake.gordon@foley.com

         *- and -*

         Joseph S. Harper
         **FOLEY & LARDNER LLP**
         150 E. Gilman Street
         P.O. Box 1497
         Madison, WI  53701-1497
         Tel: (608) 258-4310
         Fax: (608) 258-4258
         JHarper@foley.com

         *Attorneys for Plaintiff PACEWell 3 LLC*

## VERIFICATION

I, Tara Crotty, am the Secretary of PACEWell 3 LLC, the Plaintiff in the above-captioned action ("Plaintiff"). I have been authorized to make this verification for and on behalf of Plaintiff. I have read the foregoing VERIFIED COMPLAINT and am familiar with its contents. I am aware of the facts and circumstances that support the causes of action alleged in the **VERIFIED COMPLAINT**. I verify that the matters stated therein are true of my own knowledge, except as to the matters that are stated on information and belief, and as to those matters, I believe them to be true.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed in Darien, CT, this 16th of June, 2026.

_/s/ Tara Crotty_
Tara Crotty
Secretary
PACEWell 3 LLC

26